IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

WALTER EVERETT MOORE III,

    Plaintiff,

v.

SOPHIA JAMES[1] and JOSH ADCOCK,

    Defendants.

Civil Action No. 7:09-CV-98 (HL)

## ORDER

This is a civil rights action brought by a prisoner plaintiff pursuant to 42 U.S.C. § 1983. Plaintiff contends that the Defendants violated his Eighth Amendment rights.[2] On March 20, 2013, the Court conducted a non-jury trial in this case. Both Plaintiff and Defendants appeared and presented evidence. After consideration of the testimony and documentary evidence, the Court ruled in favor of Defendants from the bench. This Order provides the Court's Findings of Fact and Conclusions of Law.

## I. FINDINGS OF FACT

On July 2, 2009, Plaintiff was in an isolation cell at the Lowndes County Jail. Plaintiff wanted to use the telephone to call his brother who was in the

---

[1] Defendant James' name is now Sophia McCall. The Clerk of Court is directed to update the case docket to reflect this change. The Court will refer to her as Defendant McCall in this Order.

[2] While Plaintiff also lists O.C.G.A. § 42-4-5 and the Universal Declaration of Human Rights as being applicable to this case, 42 U.S.C. § 1983 provides the only civil remedy available to Plaintiff. Thus, the case is limited to Plaintiff's alleged violations of the Eighth Amendment.

hospital in intensive care. Plaintiff requested that he be allowed to talk to the captain. Plaintiff was rowdy and cussing because he was mad about not being allowed to use the telephone.

Plaintiff's cell door had an upper door flap and a lower door flap. Food was given to Plaintiff through the lower door flap. For safety reasons it was important for the lower door flap to stay closed when not in use.

Defendant McCall, a sergeant, came down to talk to Plaintiff. Plaintiff had his arm hanging outside of the lower door flap, which was a violation of jail policy. Plaintiff was aware at the time that having his arm outside of the door flap was against the rules. Defendant McCall initially asked Plaintiff if he was going to move his arm back inside the door flap, and he did not answer her. Defendant McCall asked Plaintiff several times to move his arm, and Plaintiff did not comply. Defendant McCall then called Defendant Adcock, a corporal, down to the cell. Defendant Adcock also asked Plaintiff to move his arm multiple times, and Plaintiff did not comply. Plaintiff was warned by Defendants that he would be tased if he did not move his arm. When Plaintiff did not move his arm, Defendant Adcock drive stunned Plaintiff with his taser.[3]

---

[3] The taser used by Defendant Adcock normally contains a cartridge which holds two wires with barbs on the end. When the trigger is pulled on the taser, the wires shoot out and the barbs embed themselves in the target's skin. The target then becomes incapacitated for a five second interval. Plaintiff was not shot with the projectiles. Instead, the cartridge was removed, and the taser was held directly against Plaintiff's skin. This is called drive stunning. A drive stun does not incapacitate the target.

Defendant Adcock placed the taser against Plaintiff's upper arm and pulled the trigger. The taser ran for five seconds and cut off. Plaintiff still refused to move his arm. Defendant Adcock drive stunned Plaintiff on his upper arm two more times, and Plaintiff did not move his arm. It was not until Defendant Adcock drive stunned Plaintiff on his lower arm that Plaintiff finally moved his arm back into his cell.[4]

Both Defendant McCall and Defendant Adcock saw Plaintiff in his cell immediately after the use of force. Plaintiff did not appear to be injured in any way and did not tell either Defendant that he was injured. As part of the jail's use of force policy, Plaintiff was examined by Shirley Lewis, a Registered Nurse who has worked at the jail for over twenty years. In her medical report, Nurse Lewis states that Plaintiff had a small abrasion on his upper arm, but no skin tears or bleeding. No medical treatment was indicated. Plaintiff stated to Nurse Lewis, "This is nothing, I don't care about no taser." (Def. Ex. 2).

Plaintiff testified that the taser burned his arm, and showed the Court two circular marks on his lower arm which he contends are from the taser. He also testified that he needs medication to help him sleep because the tasing affected his sleep pattern.

## II. CONCLUSIONS OF LAW

Based on a review of the case file and Plaintiff's complaints, the Court has determined that there are two claims to be decided in this case. The first is an

---

[4] Defendant Adcock testified at trial that his use of the taser was in line with Lowndes County Jail policy.

excessive use of force claim against Defendant Adcock. The second is a failure to stop claim against Defendant McCall.

### A.     Excessive Use of Force Claim against Defendant Adcock

To establish a claim of excessive use of force under the Eighth Amendment, an inmate must present evidence to show that the force was applied "maliciously and sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline." Whitley v. Albers, 475 U.S. 312, 320-21, 106 S.Ct. 1078 (1986).

Prison officers are given a wide range of deference when acting to preserve discipline and security, and the use of force against an inmate while trying to secure him or prevent harm to others "does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." Campbell v. Sikes, 169 F.3d 1353, 1372 (11th Cir. 1999).

In determining whether force was applied maliciously and sadistically to cause harm, courts are to consider: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted upon the prisoner; (4) the extent of the threat to the safety of staff and inmates; and (5) any efforts made to temper the severity of a forceful response. Whitley, 475 U.S. at 321. The court is to consider these factors "as reasonably perceived by" the officer based on the facts known to him at the

time and "give a wide range of deference to prison officials acting to preserve discipline and security." Id. This deference also applies when considering "[d]ecisions made at the scene of a disturbance." Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007) (quotation omitted).

### 1.   Need for application of force

By not obeying direct orders, Plaintiff created a situation which justified the use of some force. When an inmate creates a disturbance, jailers are justified in using force to restore order. Cockrell, 510 F.3d at 1311 ("'The need for the use of force is established by the undisputed evidence that [the inmate] created a disturbance. . . .Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding.'" (quoting Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990) (alteration omitted)). Under the facts presented, the Court concludes that it was reasonable for Defendant Adcock to believe that the use of some force against Plaintiff was necessary.

### 2.   Relationship between the need and amount of force used

While some force may be used to control an unruly inmate, the force used must be proportionate to the need to restore order. Cockrell, 510 F.3d at 1312. The Court finds that Defendant Adcock did not use an unreasonable amount of force on Plaintiff under the circumstances. Plaintiff had refused direct orders from both Defendant McCall and Defendant Adcock, and the amount of force used was minimal.

### 3. Extent of the injury inflicted

Although the "nature of the force rather than the extent of the injury" is the key question in an excessive use of force case, Wilkins v. Gaddy, --- U.S. ---, 130 S.Ct. 1175, 1176, 175 L.Ed.2d 995 (2010), the extent of the injury is still a relevant "factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation." Id. at 1178.

The only recorded injury Plaintiff suffered when Defendant Adcock tased him was a small abrasion on his arm. No medical treatment was required. While Plaintiff showed the Court two circular marks on his lower arm which he contends are from the taser, there is no objective evidence in the record to connect those marks to Defendant Adcock's actions. In any event, no evidence was presented that the marks cause Plaintiff pain or otherwise affect his life in any way.

As for Plaintiff's testimony that he needs medication to help him sleep because the tasing affected his sleep pattern, Plaintiff presented no medical evidence to support his allegation. There is nothing in the record showing that Plaintiff currently receives any medication at all, much less that he had to be prescribed medication to help him sleep.

These minimal injuries lead the Court to find that Defendant Adcock's use of force was to gain compliance, not cause harm.

### 4. Extent of the threat to the safety of staff and inmates

Based on the evidence presented at trial, the Court finds that this factor is either neutral or weighs slightly in Plaintiff's favor. While Defendant McCall

6

testified it was important to keep the lower door flap closed for the safety of people passing through the area, there was no testimony that there were actually people in the area around Plaintiff's cell during the time in question. There was also no evidence that Plaintiff resisted the Defendants in any way before, during, or after the tasing. But on the other hand, Plaintiff was admittedly rowdy when Defendant McCall arrived at his cell, and Plaintiff refused direct orders from two officers, so it is at least arguable that he posed some threat to the Defendants. However, even if the Court finds that this factor weighs in Plaintiff's favor, it is offset by the other four factors.

### 5. Efforts made to temper the severity of a forceful response

Defendant Adcock made an effort to temper the severity of his response. Before the use of force, both Defendant McCall and Defendant Adcock attempted to gain Plaintiff's compliance with verbal commands. Those were ignored.

Further, it is undisputed that after the incident was over, Plaintiff was immediately seen by medical personnel. *See* Cockrell, 510 F.3d at 1312 ("[T]he fact that [the officers] immediately summoned medical assistance for Cockrell, 'temper[ed] the severity of [the] forceful response,' and makes it less likely that either of them was acting sadistically instead of in good faith." (quoting Whitley, 475 U.S. at 320)).

### 6. Conclusion as to Defendant Adcock

Considering all of the Whitley factors, the Court finds that Defendant Adcock acted in a good faith effort to restore order and not with malicious and

7

sadistic intent to harm Plaintiff. Defendant Adcock did not violate Plaintiff's constitutional rights on July 2, 2009.

### B.  Failure to Stop Claim against Defendant McCall

The claim against Defendant McCall is properly characterized as a failure to stop claim under a theory of supervisory liability. "The difference between a direct failure to intervene claim and a failure to stop claim under a theory of supervisory liability lies in the position and authority of the defendant with respect to the person who commits the constitutional violation." Keating v. City of Miami, 598 F.3d 753, 765 (11th Cir. 2010). Defendant McCall, a sergeant, was superior in rank to Defendant Adcock, a corporal. Thus, the claim against Defendant McCall is a failure to stop claim rather than a failure to intervene claim.

A failure to stop claim under a theory of supervisory liability requires that the supervisor "(1) have the ability to prevent or discontinue a known constitutional violation by exercising his or her authority over the subordinate who commits the constitutional violation, and (2) subsequently fails to exercise that authority to stop it." Id. Of course, for liability to apply there must first be a constitutional violation by a subordinate. As discussed above, the Court has determined that Defendant Adcock did not violate Plaintiff's constitutional rights. Thus, Defendant McCall cannot be held liable for failure to stop.

## III. CONCLUSION

The Court finds in Defendants' favor on both the excessive use of force claim and the failure to stop claim. The Clerk of Court is directed to enter final judgment in favor of Defendants.

**SO ORDERED**, this the 27th day of March, 2013.

*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

mbh